### MEMORANDUM OF AGREEMENT BETWEEN THE UNITED STATES OF AMERICA AND LORAIN COUNTY, OHIO REGARDING COMPLIANCE WITH SECTION 4(e) OF THE VOTING RIGHTS ACT

I.      **Introduction**

The United States of America and the Lorain County, Ohio Board of Elections ("BOE") (the "Parties") enter into this Memorandum of Agreement ("Agreement" or "MOA") in order to ensure that Puerto Rican voters in Lorain County, Ohio, covered by Section 4(e) of the Voting Rights Act, 42 U.S.C. § 1973b(e), receive bilingual election materials, assistance and information.

Section 4(e) of the Voting Rights Act prohibits conditioning the right to vote, because of an inability to read, write, understand, or interpret English, to persons educated in American-flag schools in which the predominant classroom language was other than English. Id. This provision has been consistently interpreted by courts to require election materials, including ballots, in Spanish for voters who are of Puerto Rican ancestry or birth, who have limited-English proficiency ("LEP") and who have been educated in a Puerto Rican school in which the predominant classroom language was Spanish. *See United States v. Berks County*, 277 F. Supp. 2d 570, 579 (E.D. Pa. 2003); *Torres v. Sachs*, 381 F. Supp. 309, 312-13 (S.D.N.Y. 1974); *Arroyo v. Tucker*, 372 F. Supp. 764, 766-67 (E.D. Pa. 1974).  Federal courts have also consistently required sufficient bilingual poll workers, as well as Spanish-language voter outreach and information, to be provided in jurisdictions with legally significant Puerto Rican populations. *Id.*; *see also United States v. Cuyahoga County Board of Elections*, No. 1:10-cv-01949 (N.D. Oh. Sept. 1, 2010); Brief of the United States as Amicus Curiae, *Pérez-Santiago v. Volusia County*, 6:08-cv-1968-Orl-28KRS (M.D. Fla. Nov. 23, 2009); *United States v. Penns Grove and Salem County*, No. 1:08-cv-03726-JHR–AMD (D.N.J., July 29, 2008) (Settlement Agr. & Order).

- 1 -

Lorain County has a significant and consistently growing Puerto Rican population, thousands of whom are of voting age and LEP. Thousands of Puerto Ricans first moved to Lorain County during World War II, and since then, Lorain County became known for having one of the highest percentages of Puerto Ricans in the United States. In 1990, Lorain County was home to 10,991 Puerto Ricans (4.3% of 255,865 total residents). In 2000, the County was home to 13,273 Puerto Ricans (4.7% of 284,664 total residents), of whom 4,510 were born on the Island and were therefore likely to have been educated in Spanish. The County had 7,701 voting-age Puerto Ricans, of whom 2,499 (32.5%) were LEP. 13,273 Puerto Ricans accounted for the majority (67.5%) of the County's 19,676 Hispanics, and the 2,499 voting-age LEP Puerto Ricans were 71.3% of its voting-age LEP Spanish-speaking residents.

The 2005 - 2009 American Community Survey estimated that the County's Puerto Rican population increased to 15,595, and 4,350 were born in Puerto Rico. Recently-released 2010 Census data shows that there are now 17,580 Puerto Ricans in Lorain County (5.8% of 301,356 total residents). 2010 Census data also shows that Puerto Ricans are concentrated in and around Lorain City, in 22 census tracts with over 500 Puerto Ricans; but they are also spread throughout the County, as nearly half (103 out of 208) of the County's census tracts have more than 50 Puerto Ricans.

The BOE is responsible for administering elections in Lorain County and has statutory powers, duties, and responsibilities concerning the conduct of voter registration and elections held in Lorain County. Lorain County has had a legally significant Puerto Rican population for decades, and had not provided any bilingual ballots or election materials until it became aware of a United States Department of Justice investigation in September 2010.

The Parties have been in discussions regarding the need for Lorain County to come into compliance with Section 4(e). On September 20, 2010, the Department sent a letter to the BOE requesting information about compliance with Section 4(e). The Department monitored the November 2, 2010 general election in Lorain County to observe the voting experiences of LEP Puerto Rican voters. On February 24, 2011, the Department sent a letter to the BOE with its findings, which detailed the application of Section 4(e) in Lorain County and documented the failure to provide bilingual election materials, including ballots, and the failure to provide sufficient bilingual poll workers. On March 16, 2011, the Department met with the BOE to discuss measures needed to come into compliance with Section 4(e). As was agreed, during the May 3, 2011 primary election, the BOE provided some sample bilingual ballots and an increased number of bilingual poll workers. The Parties have agreed that further measures including a county-wide bilingual ballot are necessary for Lorain County to come into full compliance with Section 4(e). On the basis of this information, the BOE has agreed to enter into this Agreement and undertake the measures provided herein.

The United States and the BOE, through their respective counsel, have conferred and agree that this matter should be resolved without the burden and expense of litigation. The Parties share the goal of ensuring full compliance by Lorain County with Section 4(e) by the earliest election to be held in 2012 and that Lorain County shall take the steps agreed to in this document for the November 8, 2011 general election. As consideration for this Agreement, the United States has agreed to forego contested litigation, subject to compliance with the terms of this Agreement. The Parties have negotiated in good faith and hereby enter into this Agreement as an appropriate resolution of the claims alleged by the United States.

- 3 -

II.    **Recitals**

The United States and the BOE stipulate and agree that:

1.  The United States District Court for the Northern District of Ohio has jurisdiction to enforce provisions of the Voting Rights Act pursuant to 28 U.S.C. §§ 1331 & 1345 and 42 U.S.C. §§ 1973j(d) & 1973j(f), and the federal court would have jurisdiction over an action by the United States to enforce the Voting Rights Act and the terms of this Agreement.

2.  The United States Attorney General is authorized to enforce Section 4(e) of the Voting Rights Act, 42 U.S.C. § 1973j(d).

3.  Lorain County is subject to Section 4(e) of the Voting Rights Act, which secures the rights of "persons educated in American-flag schools in which the predominant classroom language was other than English," i.e. Puerto Rico, by prohibiting jurisdictions from "conditioning the right to vote of such persons on ability to read, write, understand, or interpret any matter in the English language." 42 U.S.C. § 1973b(e)(1).

4.  The BOE is responsible for the conduct of elections in Lorain County and for ensuring compliance with Section 4(e) of the Voting Rights Act.

5.  Lorain County has a legally significant Puerto Rican population, and under Section 4(e) of the Voting Rights Act, is required to provide bilingual election materials, including all ballots, as well as a sufficient number of bilingual poll workers and voter outreach and information in Spanish.

6.  The Parties have been in contact regarding Lorain County's need to come into compliance with Section 4(e), and the BOE has been cooperative and expressed its

- 4 -

intent to provide bilingual machine ballots and bilingual poll workers and to provide
voters with a choice of Spanish or English absentee ballots for the November 8, 2011
general election, and to come into full compliance by the earliest election to be held
in 2012 .

III.   **Terms of the Agreement**

NOW THEREFORE, for full, fair, and adequate consideration given and received, it is
hereby agreed as follows:

A.     **Translation and Dissemination of Election-Related Materials**

1.   The BOE shall provide information in Spanish about all stages of the electoral
process pertaining to the issuance, at any time during the year, of notifications, announcements,
and other informational materials concerning the opportunity to register, voter registration
deadlines, the times, places and subject matters of elections, and the absentee and early voting
processes.

2.   During any forthcoming 2011 elections, the BOE shall provide bilingually, in
English and Spanish, the machine ballots on every voting machine in the County, voting
instructions, voter registration cards and applications, and absentee ballot applications (which
will clearly provide voters with the option of receiving a Spanish-language ballot).  The BOE
shall provide absentee and provisional ballots in both English and Spanish, and shall use its best
efforts to publicize to voters that Spanish-language absentee and provisional ballots are
available.  The BOE will also use its best efforts to provide all other election-related materials in
Spanish.  The United States acknowledges that the BOE is waiting for approval of some of the
ballot language for the November 8, 2011 general election, which could impact the ability to
translate those particular sections of the ballot.

3.      Beginning with the first election in 2012, the BOE shall provide bilingually, in English and Spanish, the following election-related materials: (a) the official ballot; (b) sample ballots; (c) absentee and early voting applications and ballots; (d) provisional ballots and envelopes; (e) voter registration cards and applications; (f) voting instructions; (g) any voter information guides or pamphlets provided by the County; (h) notification of elections and polling place changes; and (i) polling place signage.  The BOE shall provide in Spanish State election-related materials and announcements that are used in County elections.

4.      Beginning with the first election in 2012, absentee and provisional ballots shall be provided bilingually, in both English and Spanish, in all precincts.  The County anticipates potential logistical challenges in providing bilingual absentee ballots in particular precincts during some future elections.  In those cases, the United States will work in good faith with the BOE on finding appropriate solutions on a case-by-case basis.

5.      The BOE shall ensure that the Bilingual Election Program Coordinator ("Coordinator") as said term is defined in numbered paragraph 17 herein provides bilingual voter registration materials to voter registration offices in the County required under the National Voter Registration Act, 42 U.S.C. § 1973gg, *et seq.*

6.      The BOE shall utilize a certified translator to prepare translated materials.  The translator shall work in coordination with the Coordinator to ensure that bilingual and Spanish-language materials are clear, accurate, and complete.

7.      Spanish-language voter information shall be distributed in newspapers and on radio within the County, on the internet, and through other media as may be reasonably available that publish or broadcast information in Spanish to the Spanish-speaking Puerto Rican community in the County.  The BOE shall consult with the Coordinator and the Spanish-

Language Advisory Group described in paragraphs 19-21 to ensure that all voter information regarding the availability of bilingual assistance and election materials is disseminated in a form, frequency, media, and at locations calculated to educate the County's Spanish-speaking LEP persons.

8.      By February 1, 2012, the BOE shall ensure that English-language election information and services available on the BOE website, in particular, (a) the ability to print forms; (b) check voter registration status; and (c) determine voting locations, are available in equivalent form in Spanish through links to Spanish-language web pages that provide the same information as English-language portions of the BOE website.  Spanish-language information and materials shall be readily accessible through easily visible and identifiable Spanish-language links on the BOE homepage in font comparable to that of English-language sections of the website.

9.      The BOE shall coordinate with the Coordinator and the Spanish-Language Advisory Group described in paragraphs 19-21 to undertake outreach efforts through Spanish-language media and relevant community organizations to notify LEP Puerto Rican voters of the availability of Spanish-language election materials and assistants at the BOE.  In addition, English and Spanish messages with this information will be added to the BOE's telephone system.

**B.      Bilingual Poll Workers**

10.     The BOE shall recruit, hire, train, and assign bilingual poll workers who are able to understand, speak, write, and read English and Spanish fluently and can provide effective translation and assistance to Spanish-speaking voters at the polls on election days and at early voting locations.

11.    Defendants agree to the following targets for Spanish-language assistance with bilingual poll workers fluent in English and Spanish:

    (a)    any election precinct in which there are 100-249 registered voters with Spanish surnames is staffed by at least one bilingual election official;

    (b)    any election precinct in which there are 250 or more registered voters with Spanish surnames is staffed by at least two bilingual election officials;

    (c)    any election precinct in which there are 500 or more registered voters with Spanish surnames shall be staffed by at least three bilingual election officials;

    (d)    each early voting location is staffed by at least one bilingual election official; and

    (e)    bilingual personnel, trained in Spanish-language election terminology, are on call and available to travel to a precinct or early voting location insufficiently staffed by bilingual poll officials to provide assistance to any Spanish-speaking voters.

The Parties may by written agreement adjust these requirements in light of reliable information that the actual need for language assistance in a particular polling place is lesser or greater than these standards.

12.    The BOE in conjunction with the United States shall determine which precincts have 100 or more Spanish-surnamed voters by conducting a Spanish-surname analysis of the current County voter registration list 90 days prior to each election.

13.    Signs in English and Spanish explaining how voters can obtain Spanish-language assistance shall be prominently posted at all polling places in Lorain County.  Such signs shall be

printed in large, easily visible lettering, and English and Spanish signs shall be posted adjacent to each other. The BOE shall also provide at least one English-Spanish election glossary (such as, for example, the Spanish-English Election Terms Glossary prepared by the United States Election Assistance Commission, available at http://www.eac.gov/voter/language-accessibility-program-1/glossary-of-election-terms/) at each polling place and early voting location.

### C.    Election Official Training

14.    The BOE shall train all poll officials and other election personnel regarding the requirements of Section 4(e), including the legal obligation and means to make effective Spanish-language assistance and materials available to voters. The training should also emphasize that poll officials must be respectful and courteous to all voters regardless of race, color, ethnicity, or language ability. The training shall be integrated into the BOE's standard training of all poll officials and other election personnel.

15.    In addition to the above general training for poll officials and other election personnel, the BOE shall include in its training of all bilingual poll officials the following election-related materials: the official ballot; sample ballots; absentee and early voting applications and ballots; provisional envelopes; voter registration cards and applications; voting instructions; any voter information guides or pamphlets provided by the County; notification of elections and polling place changes; and polling place signage. The BOE shall also provide Spanish translations of election-related information, materials, and announcements applicable to elections in the County that are provided by the State of Ohio. The BOE shall also provide all bilingual poll officials with a copy of the Spanish-language election terminology glossary referenced in paragraph 13.

16.     The BOE shall maintain a record of the time and location of training personnel and the materials involved with bilingual assistance training.  The BOE shall also record the names of poll officials who attended such training and their assigned polling places.

### D.     Bilingual Election Program Coordinator

17.     The BOE shall designate an individual to coordinate the BOE's bilingual election program ("the Coordinator") for all elections within the County.  The BOE shall provide the Coordinator with sufficient support to meet the goals of the program.  The Coordinator shall be able to understand, speak, and read fluently both Spanish and English.  The Coordinator's responsibilities shall include: coordination of the translation of ballots and other election information; development and oversight of Spanish-language election publicity, including selection of appropriate Spanish-language media for notices and announcements; training, recruitment, and assessment of the Spanish-language proficiency of bilingual poll officials; and conducting outreach to Puerto Rican voters in the County and assessing their needs for Spanish-language assistance in voting; and managing other aspects of the program.  The Coordinator shall also coordinate the notice for and conduct the meetings of the Spanish-language Advisory Group described in paragraphs 19-21 of this Agreement.

18.     The BOE shall ensure that the Coordinator provides bilingual voter registration materials to voter registration offices in Lorain County designated pursuant to the National Voter Registration Act, 42 U.S.C. § 1973gg, *et seq*.  The Coordinator shall be available if requested to offer assistance, expertise, and training regarding providing Spanish-language access for LEP persons to register at such voter registration offices.

### E.    Spanish-Language Advisory Group

19.    The BOE shall establish a Spanish-language Advisory Group (the "Advisory Group") to assist the Coordinator and the BOE in implementing the bilingual election program, in order to ensure that the most effective means are consistently utilized to provide Spanish-language access to elections to voting age LEP persons in Lorain County. The Coordinator shall solicit comments from the Advisory Group regarding the accuracy of translations, work with the Advisory Group to further outreach efforts to Puerto Rican voters in the County, encourage Advisory Group members to recommend bilingual poll officials, and generally work with the Advisory Group to help ensure the effectiveness of the County's bilingual election program. The Advisory Group shall be open to any interested person or organization subject to neutral, non-discriminatory written rules, as may reasonably be determined by the BOE and the Advisory Group, and the Coordinator shall maintain a roster of the Advisory Group members and their contact information. In their capacity as members of the Advisory Group, the Advisory Group members shall serve without compensation. After the November 8, 2011 election, the Advisory Group shall meet as it determines necessary so long as it meets at least twice during the six months before and at least once during the two months after the November 2012 general election, and at least twice during the six months before and once during the two months after each subsequent general election for the duration of this Agreement. The Parties may by writing adjust the Advisory Group's meeting schedule after consultation with the Advisory Group. The Parties agree that nothing in this Section of the Agreement shall confer standing upon the Advisory Group, or any of its members, for purposes of enforcement of the Agreement.

20.    The Coordinator (or the Coordinator's designee) shall maintain minutes of all Advisory Group meetings that shall include a record of those in attendance at the meetings,

timely provide copies of the minutes to all Advisory Group members and to the Director of the BOE after each meeting, and timely post such minutes on the BOE website.  If the BOE or the Director decides not to implement an Advisory Group recommendation, if any, or the BOE cannot reach a consensus regarding such recommendation, the BOE or the Director shall provide the Advisory Group with a statement of the reason(s) for rejecting such recommendation, which shall be recorded in or attached to the Advisory Group's minutes.  The BOE shall provide copies of Advisory Group meeting minutes to any member of the public who requests such information. The BOE shall send notices regarding the time and place of all Advisory Group meetings as soon as practical prior to each meeting to any member of the public who requests to remain informed about the meeting schedule and shall post such notices on the BOE website.

21.     The BOE shall invite all individuals on the Advisory Group roster to assist in identifying qualified bilingual residents who are interested in serving as poll officials.

**F.     Federal Observers**

22.     To assist in monitoring compliance with and ensure the effectiveness of this Agreement, and to protect the Fourteenth and Fifteenth Amendment rights of the citizens of Lorain County, the United States and the County shall move for a Stipulated Order, in the form attached hereto, to be filed simultaneously with the Complaint authorizing the appointment of federal observers for Lorain County pursuant to Section 3(a) of the Voting Rights Act, 42 U.S.C. § 1973a(a), for the duration of this Agreement.  Both parties agree to take all reasonable measures as may be necessary to ensure that the Stipulated Order, or one like it in substance and to the same effect but modified as the Court shall see fit, is issued.

23.     The County shall recognize the authority of federal observers to observe all aspects of voting conducted in the polls on Election Day, including the authority to view County personnel providing assistance to voters during voting, except where the voter objects.

**G.     Evaluation, Modification, and Termination**

24.     The Parties recognize that regular and ongoing reassessment may be necessary to provide the most effective and efficient bilingual election program.  The BOE, in consultation with the Coordinator, shall evaluate the bilingual election program after each election to determine which aspects of the program are functioning well, whether any aspects need improvement, and how to implement any needed improvements.  The program may be adjusted at any time upon joint written agreement of the Parties.

25.     This Agreement shall terminate on March 30, 2014, provided the parties agree that Defendants have achieved substantial compliance with the terms of the Agreement for the previous two election cycles.  An "election cycle" refers to all elections administered by Defendants during a calendar year.

26.     If after the November 2013 election, or anytime subsequent to that date, the Defendants' assessments show that they have been substantially complying with all aspects of this Agreement for the previous two election cycles and have the intent and means to continue compliance with Section 4(e), the Defendants will file a report with the United States demonstrating substantial compliance with each provision of this Agreement.  Defendants shall include with any certification request reports from the Coordinator and the Advisory Group detailing the Defendants' efforts to comply with the Agreement.  Defendants shall bear the burden of demonstrating that they have substantially complied with the Agreement and maintained substantial compliance for the required period.

- 13 -

27.     After conferring with Defendants, the United States, in its good faith discretion, will determine whether the Defendants have maintained substantial compliance for the requisite election cycles.  A conclusion of substantial compliance may not be unreasonably withheld.  If at any time after the November 2013 election, the parties agree that there is substantial compliance, the agreement will be terminated.

28.     Within ninety (90) days after an election administered by the County, the United States shall notify the BOE of any known alleged violation or potential violation of this Agreement and shall provide the BOE a report detailing the BOE's alleged violation of this Agreement.  The United States and the BOE shall work together in good faith to remedy as soon as possible any violation of this Agreement. The BOE may provide a written response within thirty (30) days after receipt of the written report.  If the BOE fails to submit a written response within thirty (30) days, or indicates in its written response that BOE does not have the intent or means to comply with the terms of this Agreement applicable to the particular election, the United States shall have the right to seek such relief as may be necessary to enforce the terms of this Agreement and the requirements of Section 4(e) of the Voting Rights Act.

**H.**     **Retention of Documents and Reporting Requirements**

29.     Throughout the duration of this Agreement, the BOE shall make and maintain written records of all actions taken pursuant to this Agreement sufficient to document its compliance with all of the requirements of the Agreement.  Such records shall be made available to the United States upon its written request (including via e-mail) and upon reasonable notice.

30.     Through out the duration of this Agreement, at least fourteen (14) days before each election the BOE shall provide to counsel for the United States:

- 14 -

a)     the name, address, and precincts at each polling place and early voting location;

b)     the name and title of each election official appointed and assigned to serve at each precinct and early voting location;

c)     a designation of those election officials fluent in English and Spanish;

d)     copies of any signs or other written information provided at polling locations;

e)     a set of all written materials to be provided to voters at the upcoming election; and

f)     a copy of the most recent voter registration list in a format to be agreed upon by the parties.

The BOE shall send the foregoing information by express delivery or electronically, to the following address:

> Voting Section
> United States Department of Justice
> Civil Rights Division
> 1800 G. Street, N.W., Room 7254-NWB
> Washington, D.C.  20006
> Facsimile: (202) 307-3961
> katherine.culliton@usdoj.gov

Throughout the duration of this Agreement, within thirty (30) days after each election, the BOE shall provide to counsel for the United States an updated report regarding any changes in these items, as well as information about all complaints the BOE received before, during, or after the election regarding the subject matter of this Agreement.

- 15 -

**I.**     **Enforcement**

31.     Pursuant to Paragraph 26 above, if the BOE materially fails to comply with the terms of this Agreement, this Agreement is enforceable in the United States District Court for the Northern District of Ohio and pursuant to law, and additionally in any such event, the United States may take any other actions required to enforce Section 4(e) of the Voting Rights Act in the United States District Court, including seeking appropriate relief as a substitute for or in addition enforcement of this Agreement. Nothing in this Agreement precludes the United States from taking appropriate enforcement action against the BOE for any other violations of the Voting Rights Act that are not the subject of this Agreement.

**J.**     **General**

32.     This Agreement is final and binding regarding the claims raised in this action. This Agreement is binding on the Parties and their successors in office. The Parties agree to the admissibility of this Agreement in any subsequent proceeding for its enforcement, or other action filed to enforce Section 4(e) of the Voting Rights Act.

The undersigned enter into this Agreement this  6th  day of  October,  2011

For the UNITED STATES:

For LORAIN COUNTY, LORAIN COUNTY
BOARD OF ELECTIONS, and the BOARD OF
ELECTIONS CHAIRMAN, MEMBERS, and
DIRECTOR, in their official capacities.

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

STEVEN M. DETTELBACH
United States Attorney
CAROLE SCHWARTZ RENDON
First Assistant United States Attorney
MICHELLE L. HEYER
Assistant United States Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio  44113
Telephone:  (216) 622-3686
Facsimile:  (216) 522-2404
michelle.heyer@usdoj.gov

GERALD INNES
Lorain County Prosecutor's Office
225 Court Street, Third Floor
Elyria, Ohio 44035
Telephone:  (440) 329-5370
Facsimile:  (440) 329-5430
jerry.innes@lcprosecutor.org

T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
JOHN "BERT" RUSS
KATHERINE CULLITON-GONZÁLEZ
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Room NWB-7254
Washington, D.C. 20530
Telephone:  (800) 253-2931
Facsimile:  (202) 307-3961
katherine.culliton@usdoj.gov

Thomas J. Smith

By the Lorain County Board of Elections
1985 North Ridge Road
Lorain, Ohio  44055
Telephone: (440) 326-5900
Facsimile:  (440) 326-5931

Helen W. Hurst

Anthony B. Giardini

Robert G. Roussea

- 17 -